I'm very pleased to report to the Prosecution Council and the Court, I'd like to start out by saying, Your Honor, that there's undisputed facts in this case. It's really just a legal issue. There's no dispute that the government seized Ms. Carvajal's money, held it for ten months, and although it did not have any proprietary interest in the money... Although the government did not have a proprietary interest in the money that was seized, it retained the interest for ten months, earned on the property and the money for ten months. So that's not disputed. So what this case narrows down to is two legal issues, Your Honor. First, did the $277,000 case from the circuit provide or require that there has to be a judicial finding or judicial court order that money should be returned? And the answer to that is no, although the government has argued that that case was premised on a court finding that money had to be returned. Well, that's a pretty plausible argument, isn't it? Well, it doesn't require it, Your Honor. I mean, you can possibly, plausibly make that argument, but that's not what the case says. The case specifically says if a person is found to have the right to the money, then interest has to be paid on that money. And it doesn't say there has to be a court finding. If this person is determined to be the owner of the money. And in Mrs. Carbajal's case before you, the DEA determined that the money should be returned to her. And that's what they did. After holding the money for ten months, they made the determination to return it to her. The same thing happened in the Suoka case that we cited. The City of Los Angeles determined that the money should be returned to Ms. Suoka. And that was the precedent before this case. And there was no court finding, and the government was wrong on that. There was no court finding that Ms. Suoka was determined to be the owner. Was there any effort at the time the money was returned, and while that case was still pending, any effort made to ask for interest at that time? In Ms. Carbajal's case, no, Your Honor. What happened was there was a motion to return the money itself. Right. And the government complied. And the government, while it did not comply, they opposed it at first, even though they had missed the statute of limitations. The statute of limitations expired four months ago. But they came along anyway within, what, two weeks? No, no, no. Well, four months expired. The statute of limitations expired. Four months passed, and the money still hadn't been returned. Finally, Ms. Carbajal had to file a motion to return the property. That's what I'm talking about. The time of the motion to the return of the money was a fairly short period of time. Right. After the government filed an opposition, then they went ahead and returned the money. That's correct. Right. Okay. Okay. Well, you know all about that. My question is, at the time the government returned the money, was there a request or a motion or any kind of claim made in that case, while it was still pending, to have the government pay interest? I don't believe that was part of the motion. The motion was for return of the money itself, Your Honor. And that case got dismissed. No, it wasn't dismissed. It was withdrawn. As soon as the money was returned, Ms. Carbajal didn't feel that... Well, your client withdrew it, but didn't the judge issue an order of dismissal or not? No, I don't believe. It was a motion that was filed, and the motion was withdrawn. I think it was just moot at that point. I don't recall whether there's an actual entry of a dismissal in that case. And I don't think that the case hinges on whether there's a dismissal or not, because it was withdrawn because the particular relief she was seeking was then moot, because the money was returned. It would have been, frankly, a waste of judicial resources for her to then keep claiming, well, the money should have still been returned, because that wasn't the relief she was seeking. Okay, we've been talking about 277 here. What about the statute? What we call CAPRA, which is the Civil Asset Forfeiture Reform Act. That has a provision that the government cited that says the government should not be required to disgorge the value of any intangible benefits, nor make any payments for the claim not specifically authorized by the section. Now, 277,000 does not talk about intangible benefits. It talks about financial benefit that's tangible and calculable, and that's the language specifically in that statute. Here, this is essentially a limited waiver of sovereign immunity, the section, which is section 22465b2a. It's a limited waiver saying here above is what CAPRA provides for. CAPRA, again, the Civil Asset Forfeiture Reform Act. Here's what we provide for. This is all that CAPRA specifically provides for. Whatever else is out there. And, in fact, Judge Graber in the synagogue case had a footnote, footnote four. Actually, it was... Leaving this question open. Yes. And here it is. That was my case. I know. And we made the mistake of not asking in that case for interest under 277,000. But we tried to, I guess, insert it in the appeal, and Judge Graber noted that, actually, we didn't request it underneath, below, and so it's not properly before the court. Let me ask you a question about the legislative history of CAPRA. There's a part in the legislative history report about the statute that talks about current law, and it says that under current law in some jurisdictions a person receives no interest for the time the person lost the use of property, and in some jurisdictions, yes, and it cites not our case, but it cites cases from other circuits going both ways. It's like 15,000. Yeah, the Sixth Circuit, you have these amounts of money. It doesn't really, they don't stay with me, but there's a Sixth Circuit and an Eighth Circuit case. And it doesn't explicitly resolve that. It just leaves it hanging there that it seems unfair for the jurisdictions that don't provide it, but it doesn't really say specifically what it's doing. So is it approving the cases like ours? Is it ignoring this whole issue? What do we make of that? Well, in the Sixth Circuit case of U.S. v. Ford, which came down fairly recently, that court actually looked at the legislative history and made a comment about it and said specifically that the statute and the legislative history, and I'm going to find my notes because I wrote it down here, did not abrogate those interest decisions. I'm using the word interest decision. But it said that the legislative history ratified the outcome, if not the rationale, of those decisions. So the Sixth Circuit itself has determined that their law, which is the same as 277,000, their case law, remains good law. And that was the conclusion of the Sixth Circuit based on the legislative history. Yeah. Well, after citing the cases, it does say in cases where money or other negotiable instruments were seized or money is awarded a property owner, this is manifestly unfair, referring to the ones that it was. That's right. And the purpose of the Civil Asset Forfeiture Reform Act was to provide a set of rules for judicial forfeiture cases. And that was the court's, Judge Graber's, decision in the synagogue case. Relating to cases that are actually filed in court by the government, these rules apply. But they left essentially the remainder of the body of law intact, and that's in both the Sixth Circuit, actually only in the Sixth Circuit and the Ninth Circuit. Other circuits either have decided the other way or have not decided the rule. So, Your Honors, those are the two basic areas of law. One is, does 277,000 generally hold, as Judge Morrow said in the Silica case, that the interest rule is provided in non-judicial cases? And does CAFRA, in fact, supersede all these other cases? Counsel, do you want to say something about your attorney fee claim? Your Honor, we thought that the government's response was accurate in citing the Buchanan case, that our whole argument was her action was a catalyst for getting the government to return back the money, and this is Carvajal's action. And the Buchanan case, the Supreme Court case, particularly says the catalyst theory is no longer valid. So that's why we didn't respond and reply any further to that. We're essentially conceding that point that it really was a catalyst theory that we were arguing. So you're essentially conceding the attorney fee issue. I think we have to, Your Honor. I don't think it would be proper for us to go beyond that. I just want to add that if the Court, and I'm not sure if I'll have time afterwards, but if the Court finds in favor of Ms. Carvajal and agrees on the legal issue, that the Court can instruct the district court to issue summary judgment in her favor and just leave the only remaining issue, which is the calculation of the interest, to the district court for that. Or the Court can actually ask the government in this case to just go ahead and calculate the interest and have it part of this decision, Your Honor, by declaration. You may reserve the rest of your time if you wish. Thank you, Your Honor. We'll hear from the government. Good morning, Your Honors. May it please the Court. My name is Carla Ford, and I am the Assistant U.S. Attorney representing the government in this appeal. First, I'd like to address a couple of items that the Court has asked opposing counsel about what happened in this case. The Court asked, I believe, whether Ms. Carvajal had attempted to raise the interest issue on the motion for return of property. In fact, that motion was called a motion to enforce CAFRA, return property, interest, and award of reasonable attorney's fees. So that was the motion that was filed, I believe it was in October of 2005. So the motion was made to cover all those issues, but was there a ruling? No, because Ms. Carvajal withdrew that motion before the case came to hearing. And the reason that Ms. Carvajal withdrew it, I think it's to her credit that she did rather than enforce a hearing, was that the government promised to return the money and, in fact, did do that. And so there was never any ruling on her motion for return of property. And so what happened to that case? The motion was withdrawn. The case went away because that was the only action that was pending at the time. So the reason that we're here today, and I think that may be what you're asking, Judge O'Scallen, is that Ms. Carvajal filed a Bivens action. Right. This is a different case. This is a different case. Exactly. That's right. She couched her claims in terms of a constitutional violation as against the police and agents who executed the search warrant on her home. But there were also these claims. They're no longer before us, right? But the only party before us now, on your side, is the United States, right? We're down to that? That's correct, Your Honor. We're the only parties remaining. But what Ms. Carvajal initially did was to try to have another bite at the apple, essentially, by joining her claims for CAFRA and interest and attorney's fees in that Bivens action because it was filed against that – those particular claims were only filed against the United States. When you say another bite at the apple, you're referring to the first motion where she asked for the attorney's fees and interest and then withdrew it? Yes, Your Honor. That's not res judicata, is it? Well, it may well be, Your Honor, because it is something that – There's no judgment. How can it be res judicata without a judgment in the prior action? Well, in terms of the – as I understand, and I haven't researched this recently, but res judicata has to do with issues that were raised or could have been raised in a prior proceeding between the same parties. Right. But doesn't there have to be some outcome to the prior proceeding other than a voluntary withdrawal? I think the Court is correct, Your Honor. So I'll withdraw that statement about res judicata. Why doesn't 277,000 give her a right to the interest in this case? Well, 277,000 actually requires a judgment. Where do you see that? I mean, there's one passage in the case on page 1496 where it begins, Thus we hold, and it says to the extent the funds were deposited, they constructively earned interest at a certain rate, and then has this sentence, Such amounts, in accordance with the judge's order and past practice, become part of the race to be returned with the race. And it comes right after a discussion of returning the pregnant cow and the calf and all of that. So when it talks about the judge's order and past practice, I guess I read that as sweeping in more than just judicially ordered return of the race, that it's also just the common law. Well, in 277,000 there was a discussion about payment of interest and where the monies that were being seized were being deposited pending forfeiture proceedings, and there's kind of a recitation factually of what the seizing agency, DEA, and I believe there may have been discussion about what the Department of the Treasury did with seized assets. And there was a time when monies were not deposited in bank accounts and times when they were. Okay, well, that's factually correct, and it's factually correct that that case involved a judicial order. But the idea that those were the facts of that case and that that becomes a factual requirement of the next case, that doesn't necessarily follow. It seemed to me that the court's reasoning was that just at common law, this would become part of the race, not having really much to do with the judicial order. Once it's clear that the race has to be returned, what does it consist of? It consists of the cow and her calf. It consists of the funds and the interest on those funds. Well, as I understood that passage, Your Honor, I would not say that common law is what was guiding the court at that time. I think what they were referring to was the notion that they understood that sovereign immunity would bar the government from having to be held liable to pay interest because it wasn't explicitly provided for. But the court wanted to be able to fashion a remedy for the plaintiff in that case and for the claimant, rather, I should say, in that case and in many others when they came up with the reasoning that such people are entitled to what would go along with the money and become a part of the race. Right. That's the reasoning. That has nothing to do with whether the race results from a court order or from a confession of error by the governor from any other source. The concept is that when you're dealing with a pot of money or a pregnant cow, that some things flow with that. I think that what really explains what the court was thinking about in 277,000, Your Honor, was the record in that case and the outrage that the court was feeling over its previously Yeah, that took five years and a lot of other things. Five years of proceedings administratively, judicially. Well, the equities in this case are on the other side, are they not? Well, yes, Your Honor. This case is quite different from 277,000. No, no, no. Well, I'm not quite so sure. I misunderstand? It seems to me that equities in this case are with Ms. Carvajal, are they not? Well, what the court is asking, Your Honor, is it fair that Ms. Carvajal should not have the use of her money for the period that the money was in the custody of the United States? And the answer to that question really has already been answered by this court in the Libas Limited case. That was a case in which you had a plaintiff who was an importer of manufactured items and he contested the value of the duty that was applied to the items. And in that situation, he pursued the statutory scheme that existed to provide relief from that miscalculation. But at the end of that process, that plaintiff was not satisfied, and so he filed a Bivens action and alleged constitutional violations arising out of the miscalculation. And this court in Libas Limited said that trying to, when there's a statutory scheme in existence that provides the remedies that Congress has seen fit to enact, those are the remedies to which you are limited. But there's no care for remedy here because there was no judicial proceeding, right? That's what the O'Hill-Rochell Synagogue case held, right? Well, that's what the Synagogue case held. Okay, so in this circuit, there is no statutory remedy available to her. She doesn't meet the preconditions for a statutory remedy. There is a statutory remedy for Ms. Carvajal, and that is CAFRA, and it's under 2465b1. And let me explain what I mean by that. $277,000, the government maintains, requires that there be a judgment in order for there to be a finding that the person is entitled to have interest on the property. Okay, assume we disagree with you on that. So where do you get to a CAFRA remedy? Well, my argument is, Your Honor, that $277,000 is actually codified in CAFRA when it states, when it provides the limited waiver of sovereign immunity for recovery of attorney's fees and interest. Now, also, there is the 90-day statutory. The result of what you're saying is exactly the opposite of what the legislative history tells us is intended, because under your scenario, the government could keep the money for five years. It's exactly what was going on in $277,000. The government can keep the money for as long as it wants, never begin a judicial proceeding in missing the statute of limitations, everything else, and say, oh, excuse me, never mind, here's your money back five years later, but by the way, since we didn't go through the CAFRA proceeding, you don't get interest. I mean, so you're taking, I mean, you're, and that's exactly what the legislative history tells us they didn't want to have happen because it was, in their words, manifestly unfair. So I guess I don't understand why CAFRA displaces this concept that the interest becomes part of the raise if it's outside the CAFRA procedures. Well, the legislative history, I would disagree with Your Honor, in that the legislative history states wherever interest is discussed, that it's awardable to someone who has substantially prevailed or who prevailed in a civil forfeiture action. Right. That's what CAFRA's about. That's what the synagogue case is. It's about those forfeiture proceedings, but where the government opts out and says, hey, you know, if we go through that forfeiture, we have to pay interest, so let's not bother with the forfeiture. Well, I don't think that that's what the government is permitted to do in post-CAFRA cases, which this is. This case started after CAFRA became, went into effect, and my point about the fact that $277,000 is actually contained within CAFRA arises out of the language in 277 that talks about needing to have a decision, a judgment, or a finding in order for it to be determined whether the claimant is entitled to an interest payment. That's the linchpin, really, that is throughout discussions about award of interest because it always talks about having to, there has to be a determination as to the interest of the property owner in the property on which any interest would be paid. That's an enormous loophole. You really think Congress, by trying to make the government pay more interest, ends up making the government pay less interest? I mean, that's really the result that you're arguing for. You know, Congress is trying to narrow the government's wiggle room and say, look, what you've been doing is unfair because you're taking people's money and eventually you have to give it back, and if that goes through a civil forfeiture proceeding, CAFRA tells you what to do, but where in the legislative history does it show that it intends to displace cases like $277,000 on the Sixth Circuit case? In the legislative history at HR Report 106-192, which in discussions about page, I'm sorry, Section 5, footnote 79, talks about, well, I'm going back to what the Court started out with, which was the reference to the fact that under current law, a prevailing property owner may not receive interest. So the Congress was thinking about what to do for prevailing claimants. As to those who do not prevail, meaning that there is no finding about what the property interest is, there is no remedy. But they don't say that. Actually, what's interesting about that section is that it talks about this split of authority and then talks about what happens upon entry of judgment, but it says nothing about what happens if there isn't a judicial proceeding. And so I guess what I don't understand is where neither the legislation nor the history says anything about what happens if you don't have to go through the civil forfeiture proceeding, if the government confesses error eventually. Where do you lead into that, that it displaces it all? I think it does by implication, Your Honor, in 2465b2a, which is the part of the statute that says that the United States shall not be required to disgorge the value of any intangible benefits nor make any other payments to the claimant not specifically authorized in this subsection. Which, again, if you read it in context, though, all relates to what happens when there's a civil forfeiture proceeding. That's the entirety of the context. And so it kind of you answer the question by making the assumption. I mean, it's the way the government reads that section, Your Honor, is that if it's not otherwise provided for to be recovered by a claimant in this section, 2465a or b, then it is not recoverable. And that was the way Congress dealt with it. And the legislative history is replete with references as to what happens when there's a prevailing claimant. And you're right, there's no mention specifically of and when it's administrative and the person doesn't get their interest, they're just out of luck. It doesn't say that. You're right. But what the Congress was seeking to do with CAFRA was to reform civil forfeiture. For seven years, the Congress, led by Representative Hyde, was trying to reform civil asset forfeiture because of the abuses. And I think it's fair to say that because that was their mission and it was such a long mission, the Congress well understood that there were administrative proceedings and that there were nonjudicial proceedings and that there were judicial and civil forfeiture actions. And all the language speaks to judicial and civil forfeiture actions. It rarely mentions administrative or nonjudicial, but it does have references to that in different places in the statute. My time is up, but if the Court will just allow me to finish this thought. The Congress understood that it needed to balance the need for reform in civil forfeiture with the need to allow law enforcement to use it as an effective tool. And the striking of that balance was to determine that only when there's a civil forfeiture action is there going to be an award of interest and other items of recovery because that's the only time in which there's a determination by a court through some other means to be able to say, yes, this claimant has been wronged and should be made whole and thus recover interest. Thank you, Counsel. Your time has expired. Thank you. Mr. Polo, you have some reserve time. Thank you, Your Honor. Your Honor, I think what this case comes down to, what I think Judge Graber picked off on, is the legislature's statements about manifest unfairness. The Court has to make a decision, I think, who is entitled to the money. Who should have this money? The government seized the money, determined that it should be returned, and now... A couple of the facts on this did the... Was this cash that was seized? Yes, Your Honor. And then the cash was put into an account of some... an interest-bearing account? An interest-bearing account, yes. All right. When the government did, in fact, receive interest. Yes. And your contention is that interest ought to be discouraged. Exactly, Your Honor. And that's what the $277,000 case says. And when did this seizure occur relative to the passage of CAFRA? It occurred in December of 2003. CAFRA was passed or made effective in August of 2000. It was passed six months before that, I believe, and then it was made effective six months later. Your Honor, so should the government be able to seize her money, hold on to it for 10 months, and then give it back after she has to hire an attorney and go to court to get the government to return it? Although that, because of the catalyst theory, her attorney claim is not present before the court anymore. However, that's hanging out there, that she had to actually go to court, spend $20,000 to get the government to return money they knew they had to return because they missed the filing deadline. So she had to expend $20,000, and the government also gets to keep her interest according to the government's theory. And I don't believe that that was the intent of CAFRA. The other thing that, I mean, it seems like the government is arguing that by Congress's omission, by not specifically addressing the administrative issue or the issue of administrative interest, that means Congress specifically intended to preclude any of these people, like Ms. Carvajal and the other people, and Ms. Sullivan and the other case, from essentially saying that they have no remedy whatsoever. They have to hire an attorney to contest the administrative forfeiture. They have to wait 10 months or longer to get their money back, and then the government gets to keep their money also, and sorry, that's your problem, and the government wins. And they make a lot of money off a lot of people, and probably have over the years by doing it in that manner. And this is one woman who is just trying to get something back in this case, just the interest on her money. And she's loved to have gotten her attorney's fees back, but apparently she's out of luck on that. So she's trying to at least get something back, and now at least the interest is still hanging out there. The last thing that Ms. Ford said was in citing Section B2A of 2465, she talked again, and I want to remind the Court, that that section says intangible benefits. The government is not required to disgorge intangible benefits, meaning something like damages, for example, something that's not tangible. In this case, 277,000 specifically uses the word disgorgement of tangible and calculable benefits. In this case, the money's there. It's sitting in a bank account. It's very tangible, and it's easily calculated just by whatever the interest rates were over the years. So whatever section, whatever support that section that she's talking about might throw out, the words are opposite. 277 means something totally different than what the government's arguing. I believe that's all I have, Your Honor. Thank you, Counsel. The case just argued will be submitted for decision, and we will next hear argument in the United States v. Parado, Medina.
judges: O'scannlain, Graber, Gibson